669 A.2d 201

**Richard SHOFER**

v.

**The STUART HACK COMPANY, et al.**

**No. 523, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Jan. 2, 1996.

Douglas R. Taylor, Rockville, for Appellant.

Janet M. Truhe (Ward, Janofsky & Truhe, P.A., on the brief) Towson, for Appellees.

Argued before FISCHER, CATHELL and MURPHY, JJ.

FISCHER, Judge.

Richard Shofer appeals from three separate orders of the Circuit Court for Baltimore City. The three orders, entered by three different circuit court judges during three separate hearings over the course of four years, dismissed individual damage claims from Shofer's complaint against The Stuart Hack Company (Hack Co.) and Stuart Hack (Hack) personally. The circuit court, pursuant to Maryland Rule 2–602(b), certified the three orders as final judgments so they could be directly appealed to this Court. In appealing the three orders, Shofer presents the following issues for our consideration, which have been reworded:

I. Should the Court of Appeals decision in *Shofer v. Hack Co.*, 324 Md. 92 [595 A.2d 1078] (1991) be modified on the issue of damages in light of developing case law subsequent thereto?

II. Did the circuit court err in entering the three orders that limited Shofer's damages claims?

III. Did the circuit court's orders constitute a violation of Shofer's right to due process pursuant to the United States Constitution and the Maryland Declaration of Rights?

We choose, however, to address the dispositive procedural question that neither party discussed in their briefs, but which we inquired about during oral argument:

I. Did the circuit court err in certifying for appeal three interlocutory orders that were neither final judgments nor exceptions to the final judgment rule?

## FACTS

This case is yet another stop on the never-ending litigational odyssey otherwise known as *Shofer v. Hack Co.* Shofer is an automobile dealer who is the sole stockholder and president of Catalina Enterprises, Inc. (Catalina), which trades as Crown Motors. In 1971, Catalina adopted a pension plan that qualified under the Internal Revenue Code.

Hack is president of Hack Co., which coordinates and organizes pension plans for businesses. Hack Co. administered Catalina's pension plan. Hack provided professional assistance to Catalina, which included advice on tax issues.

A single event gave rise to Shofer's lawsuit. In 1984, Shofer asked Hack whether he could legally borrow money from the pension fund. Hack, in a letter, answered Shofer's question in the affirmative. Between 1984 and 1986 Shofer proceeded to borrow $375,000 from his pension fund. Subsequently, Shofer's accountants informed him that he owed taxes on the money he borrowed from the pension fund. Shofer paid a total of $120,428.19 in both federal and Maryland taxes and tax penalties.

After paying his taxes and tax penalties, Shofer sued Hack and Hack Co. in the circuit court. Shofer contended that Hack, as a pension consultant to Catalina, should have advised him about the potential tax consequences of borrowing money from the pension fund. After the circuit court dismissed Shofer's claim with prejudice, Shofer appealed to this Court. Before this Court heard the appeal, the Court of Appeals granted certiorari. The Court of Appeals held: (1) that the contract and tort claims based on malpractice were not preempted by the Employee Retirement Income Security Act

of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1988); and (2) that the claim based on breach of duty was preempted by ERISA. The case was remanded to the circuit court for a trial on the remaining damages issues.[1] *Shofer v. Hack*, 324 Md. 92, 595 A.2d 1078 (1991).

This appeal involves three separate orders from three different circuit court judges resulting from a series of motions and answers filed by the parties following *Shofer I*.

## Judge Thomas Ward's Order

After *Shofer I*, Shofer filed his Third Amended Complaint in the circuit court. Hack moved to dismiss certain damage claims from Shofer's complaint. Specifically, Hack sought to exclude the damage claims arising out of excise taxes, prohibited transactions, and possible disqualification of Shofer's pension. On February 17, 1991 Judge Ward, in accord with *Shofer I*, granted Hack's motion. Additionally, Judge Ward dismissed Shofer's claims for punitive damages and attorney's fees. In this appeal, Shofer challenges Judge Ward's rulings on the damages issues.

## Judge Ellen Hollander's Order

Following Judge Ward's decision, and as discovery continued, Shofer filed a memorandum intended to supplement a previous answer to interrogatories. In the supplemental answer, Shofer revealed that he was seeking damages for additional taxes that might flow from a decision of the Internal Revenue Service that the loans constituted prohibited transactions, excise taxes on prohibited transactions, tax penalties arising out of his failure to follow proper procedures in borrowing from his pension, damages due to his inability to refinance his Virgin Islands property, lost salary, and lost business profits. Hack moved for summary judgment on the following grounds: (1) that Shofer's damage claims were unforeseeable, too speculative, or otherwise not recoverable;

---

1. The Court of Appeals case will be referred to as *Shofer I*.

and (2) that on the whole, the Third Amended Complaint was preempted under *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). On July 11, 1994, Judge Hollander granted partial summary judgment for Hack and dismissed Shofer's damage claims. Judge Hollander did not grant summary judgment on the preemption issue. Shofer challenges the award of partial summary judgment in this appeal.

**Judge Andre M. Davis' Order**

Following Judge Hollander's order, Shofer filed new damage claims for loss of sheltered earnings and losses attributable to tax penalties and interest. Hack filed a motion to dismiss the new damage claims. Judge Davis granted Hack's motion to dismiss the damage claim for loss of sheltered earnings, but denied the motion on the tax penalties and interest. Shofer challenges the dismissal of the damage claim for loss of sheltered earnings in this appeal.

At a pretrial conference in the circuit court, Shofer announced that he planned to appeal the three previous orders regardless of the result of the upcoming non-jury trial. Pursuant to Rule 2–602(b), Judge Davis certified the three orders as final judgments so Shofer could directly appeal to this Court before the start of the trial on the merits. Subsequently, Shofer filed a timely appeal before this Court.

## STANDARD OF REVIEW

It is this Court's duty to examine a circuit court's certification decision under Maryland Rule 2–602. *See Planning Bd. v. Mortimer,* 310 Md. 639, 648, 530 A.2d 1237 (1987). If the certification was improper, the appeal will be dismissed. Certification under Rule 2–602 is a question of law. Accordingly, this Court will afford no deference to the trial judge's decision. *See, Davis v. Davis,* 280 Md. 119, 124–126, 372 A.2d 231, *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977).

## DISCUSSION

Generally, Maryland appellate courts cannot exercise subject matter jurisdiction over a case on appeal unless that case is the product of a final judgment from a lower court. Md.Code, (1974, 1995 Repl.Vol. 1995 Supp.) § 12–301 of the Cts. & Jud.Proc.Art.[2] Section 12–301 outlines this final judgment rule, which is the foundation for appellate jurisdiction in Maryland.[3] To qualify as a final judgment, "The judgment [of the lower court] must settle the rights of the parties, thereby concluding the cause of action...." *Estep v. Georgetown Leather,* 320 Md. 277, 282, 577 A.2d 78 (1990); *see also County Comm'rs v. Schrodel,* 320 Md. 202, 209, 577 A.2d 39 (1990) (stating that "[o]rdinarily a judgment is final, for the purposes of an appeal under § 12–301, 'only if it terminates the action in [the trial] court' " (quoting *Bunting v. State,* 312 Md. 472, 476, 540 A.2d 805 (1988)); Md.Code, (1974, 1995 Repl.Vol., 1995 Supp.) § 12–101(f) of the Cts. & Jud.Proc.Art. (defining final judgment as "a judgment, decree, sentence, order, determination, decision, or other action by a court ... from which an appeal ... may be taken").

Generally, interlocutory orders, such as the three orders in this case, do not qualify as appealable orders under section 12–301.[4] Most interlocutory orders lack the "finality" characteristic that section 12–301 requires. Therefore, without a

---

**2.** Section 12–301 reads, in part:

Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law....

**3.** Unless otherwise indicated, all statutory references throughout this opinion will be from Md.Code, (1974, 1995 Repl.Vol. 1995 Supp.) § 1–101 *et seq.* of the Cts. & Jud.Proc.Art.

**4.** Interlocutory is defined as, *inter alia,* "Provisional; interim; temporary; not final. Something intervening between the commencement and the end of a suit which decides some point or matter, but is not a final decision of the whole controversy." Black's Law Dictionary 815 (6th ed. 1991).

final judgment parties cannot generally appeal interlocutory orders. *See* Md. Rule 8–131(d).

This is not to say that parties can never directly appeal an interlocutory order during the course of a trial proceeding. There are several limited exceptions to section 12–301 that provide for the appeal of interlocutory orders. For example, section 12–303,[5] the collateral order doctrine,[6] and Maryland Rule 2–602 [7] all provide for the direct appeal of interlocutory orders.

---

**5.** Section 12–303 reads, in part, "A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case...." Section 12–303 then provides a laundry list of appealable interlocutory orders. None of these legislatively created exceptions to the final judgment rule apply in this appeal.

**6.** The collateral order doctrine "treats as final and appealable a limited class of orders which [sic] do not terminate the litigation in the trial court." *Public Service Comm'n v. Patuxent Valley*, 300 Md. 200, 206, 477 A.2d 759 (1984). To qualify under the collateral order doctrine, an order must:

> [ (1) ] conclusively determine the disputed question, [ (2) ] resolve an important issue[, (3) be] completely separate from the merits of the action, and [ (4) ] be effectively unreviewable on appeal from a final judgment.

*County Comm'rs*, 320 Md. 202 at 211, 577 A.2d 39 (quoting *Clark v. Elza*, 286 Md. 208, 212, 406 A.2d 922 (1979)); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–547, 69 S.Ct. 1221, 1225–1226, 93 L.Ed. 1528 (1949).

The collateral order doctrine is not applicable to the facts of this case.

**7.** Maryland Rule 2–602 reads:

> **(a) Generally.**—Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, crossclaim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
>
> > (1) is not a final judgment;
> >
> > (2) does not terminate the action as to any of the claims or any of the parties; and
> >
> > (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.
>
> **(b) When Allowed.**—If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
>
> > (1) as to one or more but fewer than all of the claims or parties; or
>
> amount requested in a claim seeking money relief only.

■ This case concerns the appeal of three interlocutory orders pursuant to Rule 2–602. This rule permits trial judges to certify an interlocutory order for final judgment that otherwise does not qualify as a final judgment under section 12–301. *Keene Corp. v. Levin*, 330 Md. 287, 291, 623 A.2d 662 (1993). The purpose of this section and the final judgment rule is to ensure a uniform appellate process and to prevent piecemeal appeals.[8] *See Jolley v. State*, 282 Md. 353, 356, 384 A.2d 91 (1978).

■ Rule 2–602 is not a conduit for trial judges to certify any interlocutory order as a final judgment so as to acquire an advisory opinion from this Court on a pressing legal issue. The certification process is "limited to orders which, by their nature, have a characteristic of finality. Such orders must be completely dispositive of an entire claim or party." *Snowden v. Baltimore Gas & Electric*, 300 Md. 555, 563, 479 A.2d 1329 (1984); *see also Pearlstein v. Maryland Deposit Ins.*, 79 Md.App. 41, 51, 555 A.2d 528 (1989) (stating that "[a]n order that merely resolves an issue within a claim rather than an entire claim may not be certified pursuant to this rule"). A trial judge should only certify orders for final judgment in extraordinary circumstances and in an effort to prevent "sufficient hardship or unfairness." *Planning Bd. v. Mortimer*, 310 Md. 639, 648, 530 A.2d 1237 (1987).

■ The first step in our analysis is to determine whether each of the three orders disposed of an entire claim for relief or whether they each dealt with the specific issue of damages. Shofer's third amended complaint outlined two causes of action—negligence (count I) and breach of contract (count II).

---

8. The Maryland appellate system differs from that of the Federal Judiciary. In the federal system, a trial judge can certify for final judgment any interlocutory order that "involves a controlling question of law as to which there is substantial ground for difference of opinion" and where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (1988); *See generally* John A. Lynch Jr. & Richard W. Bourne, Modern Maryland Civil Procedure § 11.2 (1993, 1994 Supp.) (discussing trial orders reviewable on appeal).

The three orders, though substantially limiting Shofer's ability to collect money damages, did not dispose of either of these counts. Throughout the course of this case's procedural marathon, the causes of action remained the same—negligence and breach of contract stemming from Hack's alleged failure to advise Shofer about potential tax liability for borrowing money from his pension fund. Even after the three orders, Shofer could have gone to trial and received damages if the trial judge found either negligence or breach of contract.

The three orders concerned the damage issues encompassed in Shofer's complaint as a whole. Judge Ward's Order struck out certain damages sought by Shofer, but did not exclude Shofer from pursuing his cause of action for different types of damages. Judge Hollander's Order also struck out certain specific damages requested by Shofer, but ruled the complaint, as a whole, was still viable. Judge Davis' Order struck the damages claim for loss of sheltered earnings, but kept intact the damage claim for losses attributable to tax penalties and interest.

Not only did the certification of the three orders not dispose of an entire claim, it did not comply with Rule 2–602's requirement that there exist "no just cause for delay" with respect to hearing an appeal. This Court examines four factors to determine whether "no just cause for delay" exists:

 a. Whether delay of an appeal would work some harsh impact, including economic impact, on the litigant;

 b. Whether there is a danger that the same issues will be considered in subsequent appeals;

 c. Whether disposition of the remaining claims might moot the need for an immediate appeal; and

 d. Whether entertaining an immediate appeal would require the appellate court to determine questions that are still before the trial court.

John A. Lynch, Jr. & Richard W. Bourne, Modern Maryland Civil Procedure § 11.2, at 808 (1993, 1994 Supp.) (citing *Canterbury Rid. Condo. v. Chesapeake Investors, Inc.*, 66 Md.App. 635, 651–654, 505 A.2d 858 (1986)).

In this case, Shofer's case does not meet the "no just cause for delay" burden. Our not hearing the appeal will have no additional "harsh impact" on Shofer. The disposition of the claims may render moot the need to address the damages issues on appeal. Finally, not only are these issues before the circuit court, there is a chance these very issues will be considered in ɩ subsequent appeal following the circuit court's eventual decision.

 Shofer's threat to appeal the three orders "no matter what the result of the upcoming non-jury trial" has no effect on this Court's decision not to accept jurisdiction of the appeal. Appellate jurisdiction is established by "constitutional provisions, statutory provisions, and rules; jurisdiction cannot be conferred by consent of the parties," *Pearlstein*, 79 Md.App. at 48, 555 A.2d 528. This Court does not have jurisdiction to hear a case because one party wishes to appeal an interlocutory order adverse to its position. The role of this Court is not to furnish the Maryland Circuit Courts, or litigants before them, with advisory opinions. Our duty upon appellate review is to answer legal questions derived from a final judgment of a lower court.

This case illustrates the practical problem that can occur when trial judges remove, prior to trial, damage requests from claimants' causes of action. Where appropriate, trial judges can avoid this problem by presenting damage claims to the fact finder. After a decision on liability and damages, upon proper motion, the trial court can modify an award that is believed to be inconsistent with Maryland law. On appeal, if this Court disagrees with the trial judge's decision, then we can reinstate all or part of an award. This approach avoids the disjunctive yo-yo effect of multiple trials and multiple appeals, and might have alleviated some of the problems ' associated with this case.

This is not to say the trial judges should routinely submit all damage claims, regardless of their validity, to the fact finder. When appropriate, trial judges should strike invalid claims that might tend to confuse the fact finder (in the event the fact

finder is a jury) or for which substantial evidence might need to be introduced that otherwise would be irrelevant or prejudicial. In those cases, however, where a reasonable possibility exists that the claims have validity, a verdict should be obtained.

The circuit court's certification and Shofer's appeal in the case *sub judice* were counter productive to reaching a conclusion in the long, torturous trip of *Shofer v. Hack Co.* We have no choice but to remand this case for a trial on the remaining damage items. In the meantime, the parties are no closer to ending this seemingly never ending dispute than they were before the circuit court's certification.

For the aforegoing reasons, this Court dismisses Shofer's appeal.

**APPEAL DISMISSED.**

**APPELLANT TO PAY COSTS.**